Mr. Murray. Thank you very much. Good morning, your honors. May it please the court. Yes, I am Michael Murray. I do represent the three appellants in this case which presents a constitutional challenge under the First Amendment to the City of Sandy Springs content-based adult entertainment ordinances. Let me ask you this. When we shook this case all the way down, isn't your primary argument in this case that Justice Thomas's opinion and read has changed the standard and that now strict scrutiny applies to cases like this, to ordinances like this, instead of intermediate scrutiny? Is that really what this case is all about? That is the primary issue in this case indeed. That is our main submission that the district court erred in not recognizing that the landmark decision in read now requires all facially content-based ordinances, including like the ones of Sandy Springs, to be evaluated under strict rather than intermediate scrutiny. What do we do with all of our prior panel precedents that read did not explicitly deal with or overrule? Well, I think that what you do with them is recognize that read undermined all of those prior decisions to the point of abrogation. Let me just read one little passage from read which cannot be squared with the prior cases. Read, and I think this is the most fundamental holding in the case and the one that I think demonstrates how broad and how bright a line this is. A law that is content-based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the speech. But, I mean, it seems like in order for us to do what you're asking us to do, we'd essentially have to find that read abrogated the secondary effects doctrine. Yes. But the Supreme Court did not address that in the majority opinion in read, and Supreme Court precedent says that it's up to the Supreme Court to decide when its prior cases have been abrogated. So that seems like a big problem, but how do we, how do you propose we get past that? Because the secondary effects doctrine is nothing more than a benign motive, content-neutral justification, or lack of animus toward the ideas contained in the speech. But wasn't it raised by Justice Kagan? Yes. Okay, and the fact that it's raised by Justice Kagan in her separate opinion and not addressed by the Supreme Court, doesn't that seem like it might, there might be a meaning there behind that, which is we're not abrogating, we're aware of our secondary effects doctrine. Of course, they would be aware even if Justice Kagan hadn't announced it, but clearly they're aware of the secondary effects doctrine, but we're not abrogating it, we're not mentioning it, we're not doing anything to it in any way. It still seems to stand. How do we get past that? I read the fact that Justice Kagan pointed out that the majority opinion can't be reconciled with the secondary effects doctrine, and yet the majority opinion in no way qualified the bright line test that it established. I read that as demonstrating just how much of a sea change Reed represents, as many of the commentators in courts have. I mean, you may ultimately turn out to be right, but that's not what I'm asking you. Right now, Justice Kagan is the one who wrote that separate opinion. It did not command five votes, so it seems like that's a problem. Well, except that she wrote that, okay, again, my view is that by her pointing out that the majority opinion casts doubt upon other, not just Renton, but several other cases that she cited where she suggested that the court had applied less than strict scrutiny, and yet the majority nonetheless, despite that being pointed out to them, did nothing to qualify their language or to provide any exceptions. Yep, but the problem with that is the Supreme Court has specifically used your phrase and said the fact that our later decisions cast doubt on our earlier decision doesn't mean that the lower courts are not obligated to follow those lower, I'm sorry, those prior decisions until such time as we explicitly overrule. They've said that a number of times, so the fact that Justice Kagan pointed out it cast doubt on the earlier decisions does nothing to let us decide that we're not bound by those secondary effects decisions. Well, the other thing that I think is important to remember is that the justification for the Town of Gilbert ordinance that was posited and that was found meritorious by the Ninth Circuit was basically a secondary effects argument. The Ninth Circuit found that the ordinance was content neutral precisely because it was aimed not at the content of the expression that was going to be on the signs, but rather the external problems that are caused by signs, the secondary effects that are caused by signs. Remember, the ordinance itself was part of the land use code in the Town of Gilbert. Many of the sign cases that the Supreme Court, that lower courts have decided, have cited the secondary effects cases of Renton as justifying intermediate scrutiny and vice versa. So what was rejected by the Supreme Court was the notion that the secondary effects of signs, namely the fact that they cause traffic problems and aesthetic problems and they can clutter the highways, those have nothing to do with content. Those are secondary effects of signs and that's exactly the basis upon which regulations of signs have historically been treated under intermediate scrutiny. And that's the basis for the Ninth Circuit's decision to uphold the Town of Gilbert sign ordinance. And that's the exact thing that the Supreme Court said, sorry, that no longer applies. It doesn't matter that the government... It did not say, sorry, the secondary effects doctrine no longer applies. If it had done that, you'd have your explicit overruling. It implicitly did it and the Supreme Court has said when we are cast doubt on an earlier decision, don't you overrule it, let us do it. But it seems to me that if you look at this... If you get your ticket to the Supreme Court, we write an opinion saying they sure cast a lot of doubt on it, they implicitly undermined it, but as we discussed with counsel in oral argument, they haven't explicitly overruled. Let me suggest then a narrower ruling that I think is supported by what Reid has done. The secondary effects doctrine of Renton has only explicitly been applied to zoning ordinances. There are three cases. Young versus American Mini Theaters was a zoning case, city of Detroit. Renton itself was a zoning ordinance by that city. Almeda Books was in Los Angeles zoning ordinance. And Justice Kennedy in his concurring opinion that is regarded as the controlling opinion specifically noted that it was precisely the fact that it was the zoning context that justified treating what otherwise would be a content-based ordinance as intermediate scrutiny because the zoning context itself has a built-in rationale that rebuts the normal presumption that content-based ordinances are unconstitutional. So if you follow Renton and Almeda and you give credit to Justice Kennedy's concurring opinion, it's limited to the zoning context. You're talking about the proportionality test that Justice Kennedy employed. Well, but before he got there, he was explaining why he would apply intermediate scrutiny rather than strict scrutiny even though the Los Angeles ordinance appeared to be content-based on its face. He said that's really a fiction to call it content-neutral. But because the zoning context gives the context and rebuts the normal presumption, it's for that reason that we apply intermediate rather than strict scrutiny. My point is that if you put aside the zoning regulation in the Sandy Springs ordinances and you focus on the other regulations that were challenging, for example, the separation of alcohol and constitutionally protected nude dancing, Renton and Almeda books do not address that. Those are addressed by two Supreme Court cases, Barnes and Erie v. Pabst AM. But what's important about those cases is those were statutes that were content-neutral on their face. The Indiana statute in Barnes prohibited going nude in public everywhere. It had nothing to do with expression, didn't mention expression, had an incidental effect on nude dancing. However, O'Brien was applied in Barnes precisely because it was a content-neutral statute that applied only to had an incidental effect on O'Brien's burning his draft card to express his opposition to the Vietnam War. But so they applied O'Brien because that was content-neutral. Fast forward to Pabst. Again, the city of Erie's ordinance was content-neutral. It was an absolute ban on going nude in public. And that's why they applied the O'Brien intermediate scrutiny test. And in fact, Justice O'Connor, at the end of her opinion, said it is worth repeating that facially the ordinance under attack there is content-neutral, applies only to conduct, and doesn't have any expressive element. So what I'm saying is that if the secondary effects doctrine of Renton survives Reed, that only applies to the location and zoning. It doesn't apply when you're talking about a regulation that is outside the zoning context, such as the separation of alcohol and constitutionally protected nude dancing in the context of a set of ordinances which is entirely, totally content-based and is geared precisely to the live adult performance entertainment performed on stage in by adult entertainers in adult entertainment nightclubs. At least two circuits have held that Renton and the Renton line of cases is not affected by Reed. Both the 7th and the 8th circuits have so said. Is any circuit agreed with your position? Well, the 3rd circuit agreed with me partially, and I argued that case, the free speech versus attorney general. They applied Reed to change their position on rehearing and hold that Reed required strict scrutiny of a federal criminal statute that required record keeping and labeling for sexually explicit visual depictions. Now, they said that they didn't necessarily think Renton was overruled, but they said it was limited, they thought, to the zoning context and to the content-neutral public nudity ordinances in Erie and in Barnes versus Glenn Theater that were applied to the adult nightclubs. But they said Reed was a sea change, and they reversed a prior opinion on rehearing that had applied intermediate scrutiny to these federal criminal statutes. The government in that case argued that the secondary effects doctrine of Renton still justified intermediate scrutiny in that case, the Department of Justice who argued it. And the 3rd circuit rejected that in its reported opinion and said, no, that didn't justify not following Reed when it comes to the applying strict scrutiny. Thank you, counsel. Mr. Berkdahl. Thank you, your honors. May it please the court. Scott Berkdahl on behalf of the Applelea, the judgment below based on the 6 cases decided by this court in the last 10 years that uphold the same rule separating alcohol from live nude conduct, most recently last month in the Cornell Restaurant Ventures versus City of Oakland Park case cited in our supplemental authority. This is an a-for-sure case. Many of those ordinances, including the Oakland Park ordinance, the Manatee County ordinance in the Peekaboo Lounge case, the Daytona Beach ordinances in the Daytona Grand case actually banned live nudity by requiring at least pasties and g-strings to cover the dancers. It had some actual impact on the speech. Here, live nudity can continue. The speech fares better under this. This is less restrictive because once the alcohol is separated, you can have totally live nude dancing. Before you ever get to the Reed question, which is flawed on six different levels, but before we get to that, we have to look at how these adult clubs are regulated. They're regulated by a definition that, yes, uses adult entertainment in the name of the ordinance and in the title. However, adult entertainment is defined as live conduct characterized by the display of specified anatomical areas, i.e., nudity. And just like Barnes and Erie, nudity is defined without regard to conduct that is inherently expressive. People that are sitting on a totally nude dancer sitting on a guy's lap with his her breasts in his face is adult entertainment under this ordinance, even if she's not dancing, even if there's no expression taking place. So he's wrong about free speech coalition. I'll get to the Third Circuit decision in a minute. But this definition, as the district court explained at pages 66 to 67 of her 105 page opinion addressing all of these claims, that on its face, the adult clubs are not regulated by reference to speech that is inherently expressive. Even if they were, like the bookstore, and we'll get to that separately, but even if they were, then the Renton rule applies. And Judge Karnes is directly, Chief Judge Karnes is directly on point with the fact that under the prior precedent rule, we can't just say that there are reasons in Reed that were undermined if it doesn't explicitly overrule the secondary effects doctrine. The language of the rule is very clear. If a precedent of the Supreme Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to the Supreme Court the prerogative of overruling its own decisions. That is exactly what we have here. That's not actually the prior panel precedent rule. The prior precedent rule, that's the Supreme Court is supreme rule. That's correct. That's correct, Your Honor. But this court's decisions in Florida League of Professional Fundraisers and the main drug case that we cited in our brief says that even if the more recent cases suggest that the Supreme Court will reach a contrary result, like Judge Rosenbaum was saying, that even if it portends something like that in the future, we have to follow the prior precedent. And then the main drug case says obedience to Supreme Court's decisions is one thing, but extrapolating from a holding of the Supreme Court to change a upend settled circuit precedent on an issue that was not even before the Supreme Court in that intervening case is a totally separate thing. And that's exactly what they're arguing for here. And let me address two things. First, Justice Kagan's concurrence. Justice Kagan's concurrence, she would have decided the Reid case under intermediate scrutiny. She thought the town of Gilbert's ordinance failed intermediate scrutiny. All she said in that block paragraph with a string citation, as the district court in our case recognized, it was just a see also reference to Renton, was look, the Supreme Court has not been totally, our cases have not been totally consistent with regard to this argument or this rule that content-based regulations always trigger strict scrutiny. Renton was just one of those. The commercial speech cases, which this court has, you know, in the Walsh-Schlager case and others has refused to jump into, in Bonke even, to say that Reid upends those. But let me make a more textual argument. We know that the cases that directly control is most recently the Alameda Books case. And Justice Kennedy's controlling concurrence, every one of this case's, of this court's six cases on nude dancing and alcohol in the last 10 years have recognized that Justice Kennedy's controlling opinion is the rule of law. None of them have imposed the type of rule that Mr. Murray argues for. And in that opinion, he said content-based regulations usually trigger strict scrutiny, but there are exceptions to the how Reid deals with those cases. First, Reid cites Mosley versus the Chicago Police Department for the proposition that the government has no power to restrict expression because of its message. Well, that's the exact same case that the Renton case itself in 1986. It cited Mosley, and then it said, yet Renton's secondary effects regulation is completely consistent with our content-neutral regulations being those that are justified by reference without reference to the content of the regulated speech. So Renton, or Reid, also cited a second case, which is RAV versus City of St. Paul. Let's look at that case in 1992. Justice Scalia's opinion for the court says content-based regulations usually trigger strict scrutiny, but there are exceptions to the rule, and he cites Renton. This court just last year in Dana's Railroad Supply said the same thing in a commercial speech case. Typically, content-based regulations trigger strict scrutiny, but that rule is quote-unquote not absolute. Finally, the Reid case cites Simon and Schuster versus New York State Victims Crime Board. Well, they cited that case for the proposition that content-based regulations trigger strict scrutiny, but that's the same case that Justice Kennedy in his controlling concurrence in Alameda Books cited in the paragraph where he says, nevertheless, the central holding of Renton remains sound. So finally, last, Reid cites Sorrell, the Sorrell case on professional speech, but Justice Kennedy wrote the majority opinion in Sorrell, and he cites Renton in his Sorrell opinion for the principle that content-neutral speech regulations are those that are justified without reference to the content of the regulated speech. So it is clear both, I don't have to catalog every case in the Reid opinion, but it is clear that both before and after Renton, the Supreme Court had these categorical rules about what is content-based and what is strict scrutiny, but the secondary effects doctrine has occupied its own line of cases and has been an exception to that rule as recognized in numerous cases. Now let's talk about this argument that let's just apply Reid and or limit the zoning cases to zoning or the adult entertainment secondary effects doctrine to zoning cases. That's inherently flawed for a lot of reasons. Number one, the first new dancing case that my opposing counsel mentioned was the Barnes case, and Barnes explicitly relied on Young versus American Mini Theaters, which was an adult zoning case, and on Renton. Renton was decided in 1986. The Barnes case was decided in 1991. Ten years later, in 2000, in Pabst AM versus City of Erie, the Supreme Court again relied on Renton explicitly for a regulation targeting nude dancing, and so these cases are intermixed. If you get to Alameda Books, the most recent Supreme Court decision on secondary effects, the plurality opinion cites Barnes versus Glenn Theater in its opinion, and Justice Kennedy cites Erie. So these the secondary effects doctrine cases, and that's true in every one of this in the 11th Circuit cases, which are legion that rely on both those doctrines together. Judge Dabena noted that the 7th Circuit in the BBL versus Angola case, which is a case that I argued, as well as Mr. Murray's case in the 3rd Coalition, both agreed that Renton did not upend, or that Reed did not upend the secondary effects doctrine and destroy settled circuit precedent across the country, or Supreme Court precedent. He says that, well, they made this argument that it's only limited to zoning, it's only limited to general public nudity cases. Well, not so. First of all, even when a nudity regulation like this one, which on its face is content neutral, is embedded in an adult entertainment case, it still receives only intermediate scrutiny. That's the court's decision in Flyfish versus City of Cocoa Beach, which was decided by the 11th Circuit in 2003. But Free Speech Coalition doesn't say what Mr. Murray says it says. Free Speech Coalition says, we're not going to say that the secondary, both the majority and the dissent, said that the really say that it's been totally undermined. What they said is that Renton has applied to brick-and-mortar stores. And they cite the zoning in the nudity cases where there's a physical establishment that's being regulated by a state or local government. They said this case is about the production of actual sexually explicit speech, because congressional regulations at issue there said that when you create sexually explicit media, you have to keep these records about the age of performers. And that's a direct regulation on the production of actual speech going out into the marketplace. And they said, we don't need to address that issue, but we don't think Renton has been undermined or undone. Both the majority and the dissent agreed on that. So I think the court certainly understands the issues very clearly that this is governed by the prior precedent rule. The Supreme Court, even in the cases that are cited in Reed, there are a series of cases that recognize Renton as an exception to the rule. And that's why the circuit courts of appeals who have addressed this issue have not said that Renton has been undone. And also why this court, when it was doing its research last month to produce the opinion in Cornell Restaurant Ventures, didn't run across a signal in the research that says, oh, Renton and Alameda books have been overruled. We don't often depend on Westlaw to tell us. This is true, Your Honor. I think that in light of Justice or Judge May's thorough district court opinion that this argument about Justice Kennedy's proportionality test, I don't need to belabor that long, but she's addressed this for several pages at pages 89 to 95 of the district court. Mr. Murray admitted to her and here that it's been rejected in every case where that theory has been proffered. It certainly has not been how this court has just read Justice Kennedy's controlling opinion in Alameda books as imposing a higher standard. Essentially, they misread Justice Kennedy's concurrence. They ignore the five on-point cases, and they realize that buying into their economic impact theory would totally undo the doctrine. That's why Renton, originally in 1986, said the First Amendment is not, for First Amendment purposes, the inquiry is not concerned with economic impact. Justice Kennedy's proportionality language, if it applies, it focused on the rationale of the ordinance at issue in that case. In Los Angeles, they had a zoning rule that separated protected adult speech, which was adult retail media items being sold at Those had to be separated from one another. He said the city's premise, the rationale, cannot be that the ordinance will force closure of the business and thereby reduce the secondary effects. Here, that standard has been satisfied. The ordinance says that alcohol exacerbates secondary effects. This involves unprotected conduct, the consumption of alcohol being separated from live nude conduct, which is not inherently expressive, but can be protected if it's nude dancing. Separating those two, that does not suppress the speech itself, separating the alcohol in the language of Justice Kennedy's controlling opinion. So it's no intrinsic limitation on speech. And this court, in the Wise Enterprises cases in 2000 and in the Sammies of Mobile case in 1991, said, look, separating alcohol from nude dancing doesn't have any impact on the expression. It doesn't, the expression doesn't turn on the presence of consuming alcohol, and therefore it satisfies the constitutional standard. In fact, the expression fares better in Justice Kennedy's language than in Daytona Grande and the other recent cases that this court has upheld limitations on alcohol, plus pasties and g-string requirements that regulate the actual nudity. Of course, one of their arguments is without alcohol, we cannot survive. Therefore, we'll have no expression of this nature. Well, I think the Sixth Circuit dealt with that best in entertainment productions, where they said any reduction in erotic speech is not because of an intrinsic limitation on the speech and the ordinance itself, but because plaintiff's economic choice is to invest elsewhere. And on the issue, and this is why they don't engage us on the evidence, on the exacerbating impact of the alcohol and the negative secondary effects and the prostitution and the drugs and crime that was even admitted to by the plaintiff's own managers. That's why you open this brief and our first appellate argument is that they concede by not arguing that if this court follows its precedents in Daytona Grande, they just can't win. And that's the economic argument really goes back to Renton. The inquiry for economic purposes is not concerned with, or for First Amendment purposes is not concerned with economic impact. That certainly was not overturned. And just think about how the lack of a limiting principle on that would wreak havoc. That means if people go in to engage in sex in peep show booths, they're showing pornographic videos, a rule that this court and other courts have upheld, where you have to have open direct line of sight so people can monitor the illegal activities or make sure they don't occur. That makes the booth less attractive. This is what the Ninth Circuit said in the Fantasyland video case, rejecting the same argument from Mr. Murray. The Ocello case that we argued against each other in the Missouri Supreme Court did the same thing. They said, look, that may make it less attractive because people can't engage in the secondary effects that they want to engage in, but that's what the government has a right to reduce. And that's why Justice Kennedy's proportionality principle doesn't apply when unprotected conduct and protected expression merge in the same forum. If there's a reduction in speech, it's only because you're targeting secondary effects while leaving the movie playing on the video booth, i.e. the expression left untouched. And this is what the Sandy Springs Ordinance does in leaving nudity and dancing untouched. Mr. Murray. Thank you, Your Honor. Thank you, Your Honor. Justice Kennedy's concurrence says that an adult ordinance must have both the purpose and effect of reducing secondary effects while leaving the quantity and accessibility of speech substantially intact. Now, the evidence in this case was unrebutted, unrefuted, that the separation of alcohol and adult entertainment will lead to the closure of the only adult entertainment businesses in the city and will not only diminish the constitutionally protected entertainment that is offered there, it will erode it to the point where it is non-existent. Now, Justice Kennedy was concerned to a certain extent with economic impact because remember what he said. You had an adult bookstore under the Los Angeles Ordinance that had both a retail section and a video arcade. The ordinance required them to separate. Justice Kennedy said the theory has to be that one of these businesses will move rather than one will close because if it's the latter, then the ordinance is unconstitutional because it's no trick to reduce secondary effects by reducing the amount of speech or reducing the audience for speech. So the effect, not just the purpose, but the effect of the ordinance in Los Angeles was going to have to be ultimately shown one way or the other at trial that the adult arcade within the retail establishment would move and open elsewhere rather than one of the two forms of business would close. So when you separate... Isn't that the proportionality argument? Yes, it is. But that wasn't adopted by the other justices. No, but well except that all the courts including the 11th circuit have agreed that Justice Kennedy's concurring opinion is the controlling one because the other... But the fact that it's controlling doesn't make everything that's in it the opinion of the Supreme Court. Well except that that's the that's where he parted ways with the plurality opinion. It's on that precise point. He says that the plurality opinion did not take into account how speech will fare under their promulgation of rent. I understand, but if that were if he had been able to obtain four more votes for it then that would have been the opinion of the court. Well except that since there was no majority opinion then the Marx rule kicks in and it's the opinion that is the narrowest and all the courts have said Justice Kennedy's concurring opinion is the one that counts because his fifth vote was necessary for the outcome of the case. So yes, I think it's fair that I don't even think that Mr. Berkfeld disagrees with this. It was necessary to the extent of what the result was, but it doesn't mean that the reasoning was adopted by five members of the court. No it doesn't, but that's the whole Marx rule is that when you don't have an opinion that commands five justices then the opinion that counts is the one that ruled on the narrowest ground. I can't remember the feature, but they said Justice Kennedy's vote was the one that counts then for purposes of the Marx rule because there was no five justice majority for anything. So his concurring opinion is the ruling in the case and I think every circuit that has considered the question has agreed that his concurring opinion is the controlling opinion in Almeida books and that's why we're arguing that under his opinion you do have to take into account whether the effect of an ordinance that applies to a business that has always operated alcohol with nude dancing and they say nope, can't operate the way you've always operated, that that's the combination, the effect of that is going to be that the speech will be eliminated regardless of whether the secondary effects will be reduced. Thank you, counsel. Thank you. We'll take that case then to submission, stand in recess until tomorrow morning.